**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

Mark Dillon,

                Plaintiff,

      v.

SAIC, Inc.,

                Defendant.

Civil Action No. 1:12-cv-390 (LO/TRJ)

**DEFENDANT SAIC, INC'S MEMORANDUM**
**IN SUPPORT OF ITS MOTION TO DISMISS**

Jason C. Schwartz, Va. Bar No. 43635
Greta B. Williams,
    (pro hac vice application forthcoming)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
jschwartz@gibsondunn.com
gbwilliams@gibsondunn.com
Telephone:  202.955.8500
Facsimile:   202.467.0539

*Attorneys for Defendant SAIC, Inc.*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ....................................................................................................... 1

I.    Plaintiff Must Satisfy The Plausibility Standard Set Forth in *Twombly* and *Iqbal*,
      And Cannot Satisfy This Standard With Conclusory Allegations ...................................... 1

II.   Plaintiff Has Failed to State A Plausible Claim For Relief Under The Anti-
      Retaliation Provision Of The False Claims Act ............................................................... 4

      A.    The Naked Allegations And Legal Conclusions Sprinkled Throughout Plaintiff's
            Complaint Are Not Entitled To A Presumption Of Truth Under *Twombly* and
            *Iqbal* ............................................................................................................... 6

      B.    Plaintiff's Remaining Factual Allegations Do Not Plausibly State A Claim For
            Relief Under the FCA's Whistleblower Anti-Retaliation Provision .................... 7

III.  Plaintiff Has Failed to State A Plausible Claim for Defamation or Defamation *Per
      Se* ................................................................................................................................ 13

      A.    Count II – Defamation ....................................................................................... 13

            1.    Plaintiff Has Not Alleged Any "Actionable Statements" ........................ 15

            2.    Plaintiff Has Failed To Allege That Any Publication Occurred .............. 17

            3.    Plaintiff Has Not Alleged That Defendant Acted With The
                  Requisite Intent ..................................................................................... 18

      B.    Count III – Defamation *Per Se* ........................................................................ 19

CONCLUSION ................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................ 1, 2, 3, 6, 7, 13, 14, 18, 19, 20

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ..................................................................... 1, 2, 3, 7, 13, 18, 19

*Campion v. Northeast Utilities,*
598 F. Supp. 2d 638 (M.D. Pa. 2009) ................................................................ 12

*Chapin v. Knight-Ridder, Inc.,*
993 F.2d 1087 (4th Cir.1993) ........................................................................ 13, 15

*Compare Doyle v. Vintners Intern. Co., Inc.,*
775 F. Supp. 79 (W.D.N.Y. 1991) ..................................................................... 16

*Compare Echtenkamp v. Loudon County Public Schools,*
263 F. Supp. 2d 1043 (E.D. Va. 2003) ............................................................... 20

*Cybermotion, Inc. v. Vedcorp., L.C.,*
41 Va. Cir. 348 (Va. Cir. Ct. 1997) ................................................................... 17

*Davis v. Ross,*
754 F.2d 80 (2d Cir. 1985) ............................................................................ 16

*Eberhardt v. Integrated Design & Const., Inc.,*
167 F.3d 861 (4th Cir. 1999) ................................................................. 5, 6, 11, 12

*Fleming v. Moore,*
275 S.E.2d 632 (Va. 1981) ............................................................................ 19

*Gastyne v. Entrust, Inc.,*
2010 WL 3418235, slip op. (E.D. Va. Aug. 24, 2010) ............................................. 10

*Gazette, Inc. v. Harris,*
325 S.E.2d 713 (Va. 1985) ............................................................................ 19

*Gertz v. Robert Welch, Inc.,*
418 U.S. 323 (1974) ................................................................................. 15, 16

*Giarratano v. Johnson,*
521 F.3d 298 (4th Cir. 2008) ........................................................................... 4

*Glynn v. Impact Science & Technology, Inc.,*
807 F. Supp. 2d 391 (D. Md. 2011) .................................................................... 6

**TABLE OF AUTHORITIES**

(continued)

**Page**

*Great Coastal Express v. Ellington,*
    334 S.E.2d 846 (Va. 1985) .................................................................. 19

*Hargrave v. Tignor,*
    24 Va. Cir. 353 (Va. Cir. Ct. 1991) ..................................................... 18

*Hutchins v. Wilentz, Goldman & Spitzer,*
    253 F.3d 176 (3d Cir. 2001) ................................................................ 13

*Larimore v. Blaylock,*
    528 S.E.2d 119 (Va. 2000) .................................................................. 17

*Lian v. Sedgwick James of New York, Inc.,*
    992 F. Supp. 644 (S.D.N.Y. 1998) ...................................................... 16

*Mann v. Heckler & Koch Defense, Inc.*
    630 F.3d 338 (4th Cir. 2010) ................................................... 4, 5, 6, 13

*Mann v. Heckler & Koch Defense, Inc.,*
    639 F. Supp. 2d 619 (E.D. Va. 2009) ................................................. 6, 9

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*
    591 F.3d 250 (2009) .............................................................................. 2

*O'Bryan v. KTIV Television,*
    868 F. Supp. 1146 (N. D. Iowa 1994) ................................................ 16

*Ortiz v. Panera Bread Co.,*
    2011 WL 3353432, slip op. (E.D. Va. Aug. 2, 2011) ..................... 17, 18

*Southeastern Tidewater Opportunity Project, Inc. v. Bade,*
    435 S.E.2d 131 (Va. 1993) .................................................................. 18

*Swengler v. ITT Corp. Electro-Optical Prods. Div.,*
    993 F.2d 1063 (4th Cir. 1993) ............................................................. 19

*Taylor v. CNA Corp.,*
    782 F. Supp. 2d 182 (E.D. Va. 2010) ................................. 13, 15, 16, 17, 18, 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ............................................................................ 10

*United States ex rel. Martinez v. Va. Urology Center, P.C.,*
    2010 WL 3023521 (E.D. Va. July 29, 2010) .................................. 2, 5, 11

**TABLE OF AUTHORITIES**

(continued)

**Page**

*United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.,*
  612 F.3d 724 (4th Cir. 2010) ................................................................................ 6, 11, 13

*United States ex rel. Yesudian v. Howard Univ.,*
  153 F.3d 731 (D.C. Cir. 1998) ................................................................................ 5

*Yeagle v. Collegiate Times,*
  497 S.E.2d 136 (Va. 1998) ..................................................................................... 15

*Zahodnick v. Int'l Bus. Mach. Corp.,*
  135 F.3d 911 (4th Cir. 1997) .................................................................................. 6, 11

*Zhang v. Regan,*
  2011 WL 1456188 (E.D. Va. Apr. 14, 2011) ......................................................... 2, 4, 19

**Statutes**

31 U.S.C. § 3729(a) .................................................................................................. 4

31 U.S.C. § 3730(a) .................................................................................................. 4

31 U.S.C. § 3730(b) .................................................................................................. 4

31 U.S.C. § 3730(h) .................................................................................................. 1, 5, 6, 11

**Other Authorities**

1986 U.S.C.C.A.N. 5266, 5299 (1986)..................................................................... 5

False Claims Amendments Act of 1986,  Pub.L. No. 99–562, § 4, 100 Stat.
  3153,3157-58 ......................................................................................................... 5

S.Rep. No. 99–345, at 34 .......................................................................................... 5

**Rules**

Fed. R. Civ. P.  8(a)(2)............................................................................................. 1

## INTRODUCTION

In his Complaint, Plaintiff Mark Dillon acknowledges that, just before his layoff from SAIC, his supervisor told him that a government customer had complained about his work and questioned the value Dillon was adding to the contract. Plaintiff claims this was pretext, and that SAIC terminated him in retaliation for purported whistleblowing activity under the False Claims Act ("FCA"), 31 U.S.C. § 3730(h). Plaintiff's retaliation claim fails, however, because he has not alleged any facts that suggest he actually engaged in protected whistleblower activity. Nowhere in his Complaint does he allege that he reported concerns about fraud or the submission of false claims to the government, nor does he allege facts that would support the conclusion that he put SAIC on notice that FCA litigation was a reasonable possibility. Instead, his retaliation claim is based solely on bald assertions that fail to satisfy the requirement of "plausible" allegations showing that the plaintiff is entitled to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Plaintiff's allegations of defamation, which he claims resulted from his layoff, likewise fail, as Plaintiff has not alleged any statements which could plausibly be considered defamatory. Rather, like his retaliation claim, his defamation allegations rest merely on speculation and legal conclusions devoid of any factual support. Plaintiff's Complaint should therefore be dismissed with prejudice.

## ARGUMENT

### I. Plaintiff Must Satisfy The Plausibility Standard Set Forth in *Twombly* and *Iqbal*, And Cannot Satisfy This Standard With Conclusory Allegations

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As demonstrated below, each of Plaintiff's three claims—for retaliation under the FCA, defamation and defamation *per se*—fails to meet this standard.

Under *Twombly* and *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678. Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In other words, a plaintiff must plead facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Fourth Circuit and this Court have previously applied *Twombly* and *Iqbal* in the defamation context, requiring defamation plaintiffs to satisfy the plausibility standard. *See, e.g.*, *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 260 (2009) (affirming dismissal of defamation claim where plaintiff "failed to nudge its claims … across the line from the 'conceivable to plausible'") (quoting *Iqbal*, 556 U.S. at 682)); *Zhang v. Regan*, 2011 WL 1456188, slip op., at *8 (E.D. Va. Apr. 14, 2011) (applying *Twombly* and *Iqbal*; dismissing defamation claim where plaintiff failed to plead "any plausible basis for her conclusory allegation" that defendant's statements were made with an intent to harm her reputation). This Court has likewise applied *Iqbal* in the FCA whistleblower context. *See, e.g.*, *United States ex rel. Martinez v. Va. Urology Center, P.C.*, 2010 WL 3023521, slip. op., at *7-8 (E.D. Va. July 29, 2010) (granting defendant's motion to dismiss where the allegations of retaliation under the FCA "do not provide sufficient support for the legal conclusions contained" therein).

*Iqbal* sets forth a two-step approach for courts to use when applying the plausibility standard:

> **[1]** [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.

2

[2] When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.

In other words, first, all conclusory statements and allegations must be pared from the complaint. *Twombly*, 550 U.S. at 557. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also id.* (Rule 8 requires more than "unadorned, the defendant-unlawfully-harmed-me accusation[s]," or "naked assertions devoid of further factual enhancement") (internal citations and quotation marks omitted).

After paring all conclusory allegations from the complaint, the court then reviews the complaint's remaining contents to determine whether they "plausibly" entitle the plaintiff to relief. For a claim to be "plausible," it is insufficient that the facts alleged are "'*consistent with*' a defendant's liability," or that a violation is "*conceivable*." *Iqbal*, 556 U.S. at 678, 680 (emphases added; quoting *Twombly*, 550 U.S. at 557, 570). The mere "*possibility*" of a violation is not enough. *Iqbal*, 556 U.S. at 678 (emphasis added). Indeed, if allegations are "not only compatible with, but indeed [are] more likely explained by, lawful [] behavior," they fall short of plausibility. *Id.* at 680.

The Supreme Court made clear in *Iqbal* and *Twombly* that its purpose was in part to avoid "the potentially enormous expense of discovery" that results from permitting litigation to proceed based on conclusory complaints. *Twombly*, 550 U.S. at 559. "It is no answer," the Court stated, "that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management.'" *Id. Accord Iqbal*, 556 U.S. at 684-85 (fact that district court could "cabin" discovery was irrelevant to

whether claim should be dismissed under Rule 12(b)(6)).  Indeed, the Fourth Circuit has

concluded that the Supreme Court's decision in *Twombly* establishes a review that is "more

favorable to dismissal of a complaint" at the earliest stages of a case.  *Giarratano v. Johnson*,

521 F.3d 298, 304 n.3 (4th Cir. 2008).

Because Plaintiff's Complaint must allege facts that, if true, plausibly satisfy each

element of the claim for which he seeks relief (*Zhang*, 2011 WL 1456188, at *3), it is

appropriate to apply the *Twombly* and *Iqbal* framework separately to each of Plaintiff's claims.

*See id*.  As demonstrated below, most of Plaintiff's allegations are conclusory and merely restate

the elements of his causes of action; the sparse factual allegations which do appear in the

Complaint fail to satisfy the plausibility standard announced in *Twombly* and *Iqbal* for any of the

three causes of action.

## II.  Plaintiff Has Failed to State A Plausible Claim For Relief Under The Anti-Retaliation Provision Of The False Claims Act

In Count I of his Complaint, Plaintiff claims to have been discharged or otherwise

discriminated against in retaliation for engaging in protected activity under the FCA.  The FCA

is a statutory scheme designed to discourage fraud against the United States government.  *Mann*

*v. Heckler & Koch Defense, Inc.*, 630 F.3d 338, 342 (4th Cir. 2010).  The "cornerstone

provision" of the FCA makes it unlawful for any person to present "'a false or fraudulent claim

for payment or approval'" to the United States.  *Id.* at 342-43 (quoting 31 U.S.C. §

3729(a)(1)(A)).

There are two mechanisms to enforce this prohibition.  First, the Attorney General can

bring a civil action to remedy violations of section 3729.  31 U.S.C. § 3730(a).  Second, a private

party can bring a *qui tam* action, which is an action brought in the name of the United States.  *Id.*

§ 3730(b).

Congress amended the FCA in 1986, adding an anti-retaliation provision to protect whistleblowers.  False Claims Amendments Act of 1986, Pub.L. No. 99–562, § 4, 100 Stat. 3153, 3157-58.  The anti-retaliation provision prevents employees from being "discharged, ... suspended, ... or in any other manner discriminated against" by an employer because of "acts done by the employee ... in furtherance of [a *qui tam* ] action under this section."  31 U.S.C. § 3730(h)(1).  The purpose of this provision is to promote FCA enforcement by "assur[ing] those who may be considering exposing fraud that they are legally protected from retaliatory acts." S.Rep. No. 99–345, at 34, 1986 U.S.C.C.A.N. 5266, 5299 (1986); *Mann*, 630 F.3d at 343. Activities protected include "investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section."  S.Rep. No. 99–345, at 34.

The Fourth Circuit has held that an employee seeking to bring a cause of action under the FCA's anti-retaliation provision must meet three elements derived from the statutory text:  (1) he took acts in furtherance of a *qui tam* suit (this is known as the "protected activity" element); (2) his employer knew of these acts (this is known as the "notice" element); and (3) his employer took adverse action against him as a result of these acts.  *Mann*, 630 F.3d at 343.  To satisfy the first two elements, an employee must establish that he made complaints concerning fraud or false claims, and that the employer was on notice that *qui tam* litigation is a reasonable possibility. *See Mann*, 630 F.3d at 344; *Eberhardt v. Integrated Design & Const., Inc.*, 167 F.3d 861, 868 (4th Cir. 1999) ("The investigation must concern false or fraudulent claims, or it does not fall under the False Claims Act.") (internal quotation marks omitted); *see also Martinez*, 2010 WL 3023521, at *6 ("employee must raise 'distinct possibility' of litigation"); *United States ex rel. Yesudian v. Howard Univ.,* 153 F.3d 731, 744 (D.C. Cir. 1998) ("unless the employer is aware

that the employee is investigating fraud, ... the employer could not possess the retaliatory intent necessary to establish a violation of § 3730(h)") (internal quotation marks and citation omitted).

To constitute protected activity under the FCA, an employee must meet what the Fourth Circuit refers to as "the distinct possibility standard." *Mann*, 639 F.3d at 344. "Under this standard, 'protected activity occurs when an employee's opposition to fraud takes place in a context where 'litigation is a distinct possibility, when the conduct reasonably could lead to a viable FCA action, or when ... litigation is a reasonable possibility.'" *Id.* (quoting *Eberhardt*, 167 F.3d at 869 (internal quotation marks and citations omitted). This "'distinct possibility' standard serves a gatekeeping function" (*Glynn v. Impact Science & Technology, Inc.*, 807 F. Supp. 2d 391, 403 (D. Md. 2011)); it includes only "situations in which litigation could be filed legitimately" and excludes those in which "an employee ... fabricates a tale of fraud to extract concessions from the employer, or ... just imagines fraud but lacks proof." *Mann*, 630 F.3d at 344 (internal quotation marks omitted). For instance, "[s]imply reporting [a] concern of a mischarging to the government to [a] supervisor does not suffice to establish that [an employee] was acting 'in furtherance of' a *qui tam* action.'" *United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 735 (4th Cir. 2010) (quoting *Zahodnick v. Int'l Bus. Mach. Corp.*, 135 F.3d 911, 914 (4th Cir. 1997)).

Plaintiff's FCA whistleblower retaliation claim (Count I of the Complaint) must be dismissed because Plaintiff fails to allege any facts that plausibly suggest that he engaged in protected activity, or that the Defendant knew of any purported protected activity.

    **A.**    **The Naked Allegations And Legal Conclusions Sprinkled Throughout Plaintiff's Complaint Are Not Entitled To A Presumption Of Truth Under *Twombly* and *Iqbal***

Under *Twombly*'s first step, this Court should first identify all conclusory statements that are not entitled to any presumption of truth and pare them from the Complaint. *Iqbal*, 556 U.S.

at 679.  Plaintiff's Complaint is littered with barebones allegations and conclusory statements without factual support, including that Defendant's billing practices were "false" and/or "illegal" (Complaint ¶¶ 65, 125-26, 140, 142), that the basis for Plaintiff's termination was "pretextual" (*id.* ¶¶ 95, 109), and that Plaintiff was the subject of various allegedly adverse employment actions in "retaliation" for purportedly raising concerns about Defendant's time charging (*id.* ¶¶ 122, 125, 138, 131, 136, 140-41).  Further, the following allegation—"Mr. Dillon took lawful action in furtherance of a False Claims Act action by investigating and raising concerns to SAIC's officers, [based on] his good faith belief that SAIC was deliberately attempting to defraud the government with the falsified billing and invoices" (*id.* ¶138)—is as a mere "formulaic recitation of the elements" of a FCA whistleblower action, which the Supreme Court has made clear will not suffice.  *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555).  *See also, e.g.*, Complaint ¶¶ 138-142.  In evaluating this motion to dismiss, the Court should not afford any of the foregoing conclusory allegations any presumption of truth.

**B.**     **Plaintiff's Remaining Factual Allegations Do Not Plausibly State A Claim For Relief Under the FCA's Whistleblower Anti-Retaliation Provision**

Under *Twombly*'s second step, this Court must determine whether any remaining well-pleaded factual allegations plausibly state a claim to relief.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).  Even assuming that the remaining factual allegations are well-pleaded, not one of them suffices to state a viable claim under the FCA's anti-retaliation provision.

Plaintiff alleges in summary fashion that he "expressed concerns" about "serious accounting and technical issues related to timekeeping and contracting" to SAIC's "senior management," including to Harold Dobbs, Scott Sorensen, Donald Dixon, Lisa Daniels and Ashley Marshall.  Complaint ¶ 40.  Plaintiff also alleges that he initiated an inquiry about time charging

issues with SAIC's Ethics Committee.  *Id.* ¶ 134.  However, despite the laundry list of allegations in the Complaint, a careful examination of Plaintiff's factual allegations involving each of these individuals, as well as the Ethics Committee, reveals that at most, Plaintiff has alleged that he raised routine questions about SAIC's time charging practices; nowhere in the Complaint does Plaintiff allege facts that would plausibly support the conclusion that he was acting "in furtherance of" a *qui tam* action by reporting fraud against the Government, or that he put the company on notice that FCA litigation was a "distinct possibility."

### Ashley Marshall

The only allegation involving Marshall is that Plaintiff "referred an invoice for contractor-provided meals to Mr. Dobbs, and the Project Controller, Ashley Marshall, for discussion, before taking any action."  *Id.* ¶ 66.  Plaintiff does not allege facts indicating that he raised *any* concern to Marshall when he referred an invoice to her, let alone a concern that SAIC was somehow engaging in fraud against the government, or that *qui tam* litigation was a distinct possibility.  This hardly qualifies as protected activity "in furtherance of" a *qui tam* action.

### Lisa Daniels

With respect to Daniels, Plaintiff alleges that he "made additional requests for appropriate charge numbers [for remediation work] from . . . Lisa Daniels."  *Id.* ¶ 80.  All that Plaintiff alleges here is that he made requests – not that he raised any concern, much less a concern about fraud against the government, or a complaint that indicated that litigation was a distinct possibility.

### Donald Dixon

With respect to Dixon, Plaintiff alleges as follows:

- "Mr. Dillon advised Mr. Dixon that he was demoted shortly after raising a concern regarding billing and time charges on a project. Mr. Dillon stated that he believed he

was being subjected to hostility, but did not know what action would be appropriate, *as there was no overt evidence*." *Id.* ¶ 57 (emphasis added).

- "[He] advis[ed] him that he was continuing to experience negative treatment, as the result of the transfer of further individual project responsibilities to the subcontractor, and demotion from SR responsibility." *Id.* ¶ 67.[1]

- Dillon "advis[ed] [Dixon] he was concerned about the retaliation and hostility he was experiencing after his complaints regarding the time charging on the projects and the resulting removal of his project leadership." *Id.* ¶ 73.

- Dillon "suggested" to Dixon that Dillon "may be compelled to initiate an SAIC Ethics Committee inquiry regarding the time charging issues. Mr. Dillon initially did initiate this inquiry, anonymously, for fear of further retaliation." *Id.* ¶ 85.

Despite the amount of ink Plaintiff spills on allegations involving Dixon, Dillon's allegations suggest that he did little more than complain to Dixon about problems he was having with his supervisor. As this Court has recognized, however, "'[m]ere dissatisfaction with one's treatment on the job is not, of course, enough [to qualify as protected activity under the FCA]. Nor is an employee's investigation of nothing more than his employer's non-compliance with federal or state regulations.'" *Mann v. Heckler & Koch Defense, Inc.,* 639 F. Supp. 2d 619, 639 (E.D. Va. 2009), *aff'd*, 630 F.3d 338 (quoting *Yesudian,* 153 F.3d at 740). Plaintiff does not allege that he even suggested *to Dixon* that SAIC's time charging practices were fraudulent or otherwise illegal, nor does he allege that he told Dixon he was considering initiating litigation under the FCA. Plaintiff at most alleges that he was going to make an inquiry about time charging with the SAIC Ethics Committee. *Cf. Eberhardt*, 167 F.3d at 867 (employee engaged in protected activity under FCA, when he made clear to employer prior to his termination that he intended to bring a *qui tam* action under Act). Plaintiff's allegations involving Dixon do not plausibly satisfy the protected activity element under the FCA.

---

[1] Plaintiff later characterizes this encounter with Dixon as one in which he "advis[ed] him that he was continuing to experience negative and retaliatory treatment *as a result of his lawful reporting of his concerns*." *See also* Complaint ¶ 127 (emphasis added).

*Scott Sorensen*

With respect to Sorensen, Dillon alleges:

- "To confirm his own experience and knowledge Mr. Dillon emailed SAIC's Corporate Executive who oversees Timekeeping, Vice President for Finance, and Deputy Director of Accounting, Scott Sorensen, explaining his work, projects, billing practices and the instructions from Mr. Dobbs. Mr. Dillon explained his timekeeping practices, and asked, 'Can you confirm that this is correct policy?' Mr. Sorensen responded, 'You have been correctly charging your time to overhead for the time spent on the timesheet administration tasks.'" *Id.* ¶ 47

- "Mr. Dillon reported the above issues to Mr. Sorensen because he was specifically vested with the authority to monitor and administer timekeeping, and to ensure accuracy with respect to SAIC's internal financial reporting relating to Timekeeping." *Id.* ¶ 48; *see also id.*¶ 120 (similar).

In reality, however, in Dillon's April 13, 2011 e-mail to Sorensen, Dillon merely described the way that he had been recording his own time and asked Sorensen: "Can you confirm that this is correct policy?"  As evidenced in this e-mail, attached hereto as Exhibit A,[2] Dillon did not "report" any concerns relating to time charging; he did not mention Dobbs' instructions in this regard at all, much less report that employees "were being instructed to falsely and fraudulently bill non-billable overhead charges to the client (the Federal government)" as he now (implausibly) alleges that he "reasonably believed."  Complaint ¶ 120.

*Harold Dobbs*

With respect to Dobbs, Plaintiff alleges that he "responded that he was concerned about Mr. Dobbs' timekeeping directions [to post non-billable overhead charges to the customer as billable charges]." *Id.* ¶ 43.  Plaintiff also alleges that "[u]pon receiving Mr. Dobbs' email [questioning why he charges overhead to complete his timecard], Mr. Dillon approached

---

[2]  Because Plaintiff incorporated this e-mail by reference in the Complaint, this Court may take judicial notice of it on a motion to dismiss.  *See Gastyne v. Entrust, Inc.*, 2010 WL 3418235, slip op. at *1 n.2 (E.D. Va. Aug. 24, 2010) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007)).  Defendant has attached this e-mail hereto as Exhibit A.

Mr. Dobbs to discuss timekeeping and allocating time to overhead per Mr. Sorensen's direction.

Mr. Dobbs was visibly displeased. When Mr. Dillon offered to provide Mr. Dobbs a copy of

Mr. Sorensen's email, Mr. Dobbs emphatically stated that he did not want a copy. The discussion

ended with Mr. Dillon indicating he had no choice but to follow correct timekeeping policy." *Id.*

¶ 52.[3]

      Plaintiff fails to allege that he complained to Dobbs that charging timecard administration

to the customer was fraudulent or illegal.  As stated above, in the Fourth Circuit, "[s]imply

reporting [a] concern of a mischarging to the government to [a] supervisor does not suffice to

establish that [an employee] was acting 'in furtherance of' a *qui tam* action.'" *United States ex*

*rel. Owens*, 612 F.3d at 735 (quoting *Zahodnick*, 135 F.3d at 914).

      Plaintiffs also fails to allege any facts that could have put Dobbs on notice that he was

acting "in furtherance of" a *qui tam* action.  "This Court has focused on whether an employee

specifically warned an employer of the possibility of a civil action, as opposed to merely

highlighting illegal behavior." *Martinez*, 2010 WL 3023521 at *6.  In *Martinez*, while the

pleadings established that plaintiff raised concerns about her employer's compliance with

various regulations and her employer's "ostensibly fraudulent billing practices," "at no point [did

she] allege that she filed, or threatened to file, an action under the FCA prior to her termination."

*Id.* at *6.  Accordingly, this Court found that "[i]n the absence of any such allegations regarding

a civil action, [plaintiff] has failed to state an essential element" of an FCA whistleblower claim,

because "in this Circuit the protection of § 3730(h) only extends to employees who are found to

be developing *qui tam* claims and who are terminated for that reason." *Id.* (citing *Eberhardt*, 167

---

[3] Plaintiff also alleges that he referred an invoice for contractor meals to Dobbs, as he did with
Marshall (Complaint ¶ 66), and that he requested a remediation charge number from Dobbs,
as he did with Daniels (*id.* ¶ 83).  These actions do not allege protected activity for the same
reasons discussed in the sections describing the allegations involving Marshall and Daniels.

F.3d at 866).  Similarly, in *Campion v. Northeast Utilities*, 598 F. Supp. 2d 638, 657-58 (M.D. Pa. 2009), the court applied *Twombly* and dismissed plaintiff's FCA whistleblower claim because, while the employee allegedly notified his supervisor about some concerns regarding "falsification of time sheets," he did not allege that he informed his supervisor that he was concerned that this conduct was causing government funds to be lost, or that he gave any indication that he may ultimately initiate an FCA action or report the employer's activities to the government.

At most, Plaintiff's allegations suggest that Dillon believed that Dobbs' instructions were contrary to SAIC's internal policies; Dillon does not allege that he ever told Dobbs, or even suggested to Dobbs, that the billing practices were illegal, nor does he allege that he ever threatened to file an FCA claim.  Dillon has therefore failed to allege any plausible protected activity with respect to Dobbs.

### *Ethics Committee*

With regard to SAIC's Ethic Committee, plaintiff alleges that he "requested through the Ethics Committee that he be given whistleblower protection, verbally and by email, in accordance with SAIC published Corporate Policy."  Complaint ¶ 93.  He also alleges "[b]etween December 29, 2011 and mid-January 2012, Mr. Dillon completed SAIC's annual ethics training, which confirmed that he had been appropriately billing his time.  Consequently, Mr. Dillon initiated an Ethics Committee inquiry regarding the time charging issues." *Id.* ¶ 93.

Once again, however, Plaintiff has not alleged that he reported any fraudulent or illegal activity or put the company on notice that FCA litigation was a distinct possibility.  "[B]ecause the investigation must concern 'false or fraudulent' claims,'" Plaintiff's purported investigation "does not fall under the False Claims Act." *Eberhart*, 167 F.3d at 868; *see also, e.g.*, *Hutchins v.*

*Wilentz, Goldman & Spitzer*, 253 F.3d 176, 193 (3d Cir. 2001) (plaintiff did not engage in protected activity under the FCA where he never threatened to report his discovery of the firm's billing practices to a government authority, never informed his supervisors he believed this billing practice was "illegal," nor did he file an FCA suit until after he was terminated).

Thus, a careful examination of each and every one of the alleged facts in the Complaint demonstrates that, even by his own account, Plaintiff never told anyone at SAIC that he believed the company was engaged in fraudulent or other illegal practices; his factual allegations lack the "hallmarks of protected whistleblowing activity." *See United States ex rel. Owens*, 612 F.3d at 736 (affirming summary judgment for employer where, *inter alia*, the complaints raised by plaintiff gave no indication that he was concerned about fraud). Moreover, Plaintiff fails to allege any facts that would plausibly support the conclusion that he put SAIC on notice that FCA litigation was a distinct possibility. *Mann*, 630 F.3d at 344. The Court should therefore dismiss Plaintiff's FCA allegations because Plaintiff's complaint fails to allege facts that could plausibly show that he engaged in protected activity. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

**III.     Plaintiff Has Failed to State A Plausible Claim for Defamation or Defamation *Per Se***

Counts II and III of the Complaint similarly fail to pass the threshold test for plausibility under *Twombly* and *Iqbal*.

**A.     Count II – Defamation**

A plaintiff claiming defamation must show:  (i) publication; (ii) of an actionable statement with (iii) the requisite intent. *Taylor v. CNA Corp.*, 782 F. Supp. 2d 182, 201 (E.D. Va. 2010) (citing *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)).

Under *Twombly*'s first step, this Court should first identify all conclusory statements that are not entitled to any presumption of truth and pare them from the Complaint. *Iqbal*, 556 U.S.

at 679.  These include allegations that one of Dobbs' statements was "completely false" and that

Dobbs "knew it to be false at the time he made it, but made the comment as part of a dishonest

scheme to discredit and defame" Plaintiff (Complaint ¶ 149); that "[t]he defendant's statements

and conduct assert that Mr. Dillon was unfit to perform the duties of his employment, that he

lacked integrity in his profession" (*id.* ¶ 152); that "Defendant acted with malice and with

willful, wanton or reckless, and a conscious disregard for Dillon's rights" (*id.* ¶ 155); *see also id.*

¶¶ 153-54.  These wholly conclusory allegations are not entitled to a presumption of truth and

cannot save Plaintiff's defamation claims from dismissal.

    Under *Twombly*'s second step, this Court must evaluate whether the remaining well-

pleaded factual allegations plausibly state a claim to relief.  *Iqbal*, 556 U.S. at 679.  Even if the

remaining allegations were well-pleaded, none of them is sufficient to state a plausible claim of

defamation.

    Plaintiff's remaining defamation-related allegations do not come close to the plausibility

standard with respect to any of the three elements required to establish a *prima facie* claim for

defamation.  Plaintiff's defamation-related allegations are as follows:

1. "Mr. Dobbs demoted Mr. Dillon from [] his managerial position on the project" and
   "communicated [this purported demotion] to Mr. Dillon in front of Carsten Schmid,
   the Deputy Program Manager."  Complaint ¶ 53.[4]

2. "Mr. Dobbs directed Mr. Dillon to have no further contact with the vendor at issue"
   "in the presence of other SAIC employees."  *Id.* ¶¶ 66, 146.

---

[4] Plaintiff also alleges that "Mr. Dobbs refused Mr. Dillon's suggestion to announce the
reassignment and never formally announced the position change."  Complaint ¶ 56; *see also
id.* ¶ 147 (alleging that Dobbs' refusal to announce Plaintiff's reassignment "cloak[ed] Mr.
Dillon's reassignment with an air of secrecy suggesting that Mr. Dillon was reassigned for
negative reasons or as punishment").  Plaintiff appears to suggest that Dobbs' *refusal* to
make a public statement about a personnel decision could somehow constitute a defamatory
statement.  To say the least, this novel theory is implausible and should be rejected.

3.  "Mr. Dobbs also claimed the customer thought Mr. Dillon's work was too 'complex.' This alleged claim that Mr. Dillon's work was 'complex' mirrored words Mr. Dobbs previously used to describe Mr. Dillon and demonstrated that he had originated these thoughts in the customer's mind - that is, assuming the customer ever expressed such a concern. Mr. Dobbs' 2010 evaluation belies this statement." *Id.* ¶¶ 88, 149 (similar).

As demonstrated below, none of these allegations state a plausible claim for defamation.

### 1.      Plaintiff Has Not Alleged Any "Actionable Statements"

"To be 'actionable,' the statement must not only be false, but defamatory, that is, it must "'tend so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Taylor*, 782 F. Supp. 2d at 202 (quoting *Chapin*, 993 F.2d at 1092).  In other words, "'merely offensive or unpleasant statements are not defamatory; rather, defamatory statements 'are those that make the plaintiff appear odious, infamous, or ridiculous.'" *Id.* (quoting *Chapin*, 993 F.2d at 1092).

"'[S]peech which does not contain a provably false factual connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action.'" *Taylor*, 782 F. Supp. 2d at 201 (quoting *Yeagle v. Collegiate Times,* 497 S.E.2d 136, 137 (Va. 1998)).  "Such speech is sometimes referred to as 'pure expressions of opinion.'" *Taylor*, 782 F. Supp. 2d at 201 (quoting *Yeagle* at 137 n. 1).  Statements of opinion are protected by the First Amendment.  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974).

The first two statements identified by Plaintiff merely reflect directives issued by Plaintiff's manager.  Statement (1) reflects Plaintiff's manager's alleged demotion of Plaintiff in the presence of another company manager.  Statement (2) reflects Plaintiff's manager's alleged instruction to Plaintiff, supposedly issued in the presence of other employees, that Plaintiff refrain from further contact with a particular vendor.  It is inconceivable that a manager's

instructions to a subordinate employee, or communication of a demotion in front of another company manager, unaccompanied by false and defamatory accusations, could constitute defamation.  *See O'Bryan v. KTIV Television*, 868 F. Supp. 1146, 1170 (N. D. Iowa 1994) ("mere publication of an employee's demotion is not itself defamatory"), *aff'd in part, rev'd in part on other grounds*, 64 F.3d 1188 (8th Cir. 1995); *see also Davis v. Ross,* 754 F.2d 80, 84 (2d Cir. 1985) (merely stating that employee was terminated is not defamatory); *Lian v. Sedgwick James of New York, Inc.*, 992 F. Supp. 644, 649 (S.D.N.Y. 1998) (e-mail from managing director to other employees announcing the termination of plaintiff's employment and instructing personnel and security to take the appropriate measures to prepare for plaintiff's departure from the company did not constitute defamation).  *Compare Doyle v. Vintners Intern. Co., Inc.*, 775 F. Supp. 79, 83 (W.D.N.Y. 1991) (concluding it was not defamatory to publish to the media that plaintiff had been reassigned to a less-prestigious position).

The only statement that Dillon even alleges to be "false" is statement (3) above.  Plaintiff appears to allege that Dobbs must have made this comment—that Plaintiff's work was "too complex"—to Coyne about Plaintiff's performance in order for her to have the same view. Complaint ¶ 149.  Even if Dobbs did tell Coyne that Dillon's work was "too complex," (which, as evidenced by the Complaint itself, is sheer speculation), this statement was not provably false—it was a matter of opinion, the expression of which is protected by the First Amendment. *See Gertz*, 418 U.S. at 339.  Lastly, even if calling Plaintiff's work "too complex" could be somehow considered a factual statement, it is not defamatory because it could not plausibly be construed as making Dillon appear "odious, infamous, or ridiculous." *Taylor*, 782 F. Supp. 2d at 201.

Plaintiff has therefore failed to allege any "actionable statement[s]" on which to premise his claim for defamation.

### 2. Plaintiff Has Failed To Allege That Any Publication Occurred

"The publication requirement for defamation requires a dissemination of the statement to a third party where that dissemination does not occur in a privileged context." *Id.*

With regard to statement (3) above, Plaintiff has not alleged any facts that plausibly suggest that Dobbs actually told Coyne that Plaintiff's work was too "complex." Plaintiff merely infers that because Dobbs had made a similar critique of Plaintiff's work in his performance review, Dobbs must have told Coyne that Dillon's work was "too complex." *See* Complaint ¶ 88. This will not suffice to sustain a claim for relief, because "'[t]he failure to allege and prove that there was publication of defamatory statements by the Defendant to a third party is fatal[.]'" *Ortiz v. Panera Bread Co.*, 2011 WL 3353432, slip op., at *4 (E.D. Va. Aug. 2, 2011) (quoting *Cybermotion, Inc. v. Vedcorp., L.C.*, 41 Va. Cir. 348, 348 (Va. Cir. Ct. 1997)).

Furthermore, even to the extent that Plaintiff plausibly alleges that any of the above statements were published to third parties, they relate to employment matters and therefore are privileged. *See Taylor*, 782 F. Supp. 2d at 202 ("communications between persons on a subject in which the persons have an interest or duty are occasions of privilege … the privilege applies broadly to all statements related to 'employment matters,' provided the parties to the communication have a duty or interest in the subject matter" (quoting *Larimore v. Blaylock*, 528 S.E.2d 119, 122 (Va. 2000))); *see also Ortiz*, 2011 WL 3353432 at *4 ("It is an established general rule that a communication respecting the character of an employee or former employee is qualifiedly privileged if made in good faith by a person having a duty in the premises to one who has a definite interest therein." (quoting *Hargrave v. Tignor*, 24 Va. Cir. 353, 358 (Va. Cir. Ct.

1991))).  Statement (1) was allegedly made in the presence of another member of management, statement (2) was allegedly made in the presence of co-workers, and statement (3) was allegedly made to a customer for whom Plaintiff and SAIC worked, all of whom shared an interest in Dillon's work.  In addition, both statements (1) and (2) merely reflect management actions, and statement (3) reflects an assessment of work product.  Thus, all three of these statements are privileged.  *See Ortiz*, 2011 WL 3353432 at *5 (holding that discussions concerning the reasons for plaintiff's termination between members of management were privileged, and dismissing defamation claim for failure to meet publication element).

This qualified privilege can be lost if plaintiff proves by clear and convincing evidence that the statements were made with malice.  *Taylor*, 782 F. Supp. 2d at 202 (citing *Southeastern Tidewater Opportunity Project, Inc. v. Bade*, 435 S.E.2d 131, 132 (Va. 1993)).  "[A] showing of malice to overcome qualified privilege requires more than simply that the statement is critical of the plaintiff … [plaintiff must show it was actuated by] 'personal spite, or ill-will, independent of the occasion on which the communication was made.'"  *Taylor*, 782 F. Supp. 2d at 202 n.12 (quoting *Southeastern Tidewater*, 435 S.E.2d at 132).  Here, Plaintiff's allegations of malice are "naked assertion[s]" devoid of "further factual enhancement."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Accordingly, Plaintiff has failed to allege facts that plausibly suggest he could meet the publication element of a *prima facie* claim for defamation, or that any alleged statements fell outside of the scope of the employment matters privilege.

### 3.  Plaintiff Has Not Alleged That Defendant Acted With The Requisite Intent

Plaintiff's defamation claim fails for yet another reason as well.  Where, as here, the plaintiff asserting a defamation claim is a private individual, the defendant may be found liable only if the defendant knew the statement to be false or negligently failed to ascertain whether the

statement was false.  *Taylor*, 782 F. Supp. 2d at 201 (citing *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 725 (Va. 1985)).

As described above, the only statement which Plaintiff alleges to be "false," is Dobbs' purported comment to Coyne that Dillon's work was "too complex."  To the extent Dobbs ever actually made this comment, however, it was Dobbs' opinion, premised on his own experience with Dillon's work, that Dillon's work was too complex.  Indeed, Plaintiff specifically alleges that Dobbs articulated this criticism in Dillon's performance evaluation.  Complaint ¶ 36. Therefore, even if Dobbs did make this statement to Coyne, Dillon fails to allege facts from which the Court could plausibly conclude that he acted with the requisite intent in making it. Accordingly, his defamation claim must be dismissed for this reason as well.  *See Zhang*, 2011 WL 1456188 at *8 (dismissing defamation claim where plaintiff pled only "conclusory allegations" regarding the defendant's intent).

## B.      Count III – Defamation *Per Se*

"Under Virginia law, it is defamation *per se* to make false statements which 'prejudice [a] person in his or her profession or trade.'"  *Swengler v. ITT Corp. Electro-Optical Prods. Div.*, 993 F.2d 1063, 1070 (4th Cir. 1993) (quoting *Great Coastal Express v. Ellington*, 334 S.E.2d 846, 849 (Va. 1985)).  For such prejudice to arise, the statements at issue must relate to "'the skills or character required to carry out the particular occupation of the plaintiff.'"  *Swengler*, 993 F.2d at 1070-71 (quoting *Fleming v. Moore*, 275 S.E.2d 632, 636 (Va. 1981).

Plaintiff makes only a "[t]hreadbare recital[] of the elements" of the cause of action for defamation *per se* (*Iqbal*, 556 U.S. at 678), alleging that Defendant's "statements and conduct assert that Mr. Dillon was unfit to perform the duties of his employment, that he lacked integrity in his profession" (*id.* ¶ 152).  Once these conclusory allegations are peeled away (per *Iqbal* and *Twombly*), what is left are "statements" in which Dobbs allegedly demoted Plaintiff in front of

another manager (*id.* ¶ 53); told Plaintiff in the presence of co-workers not to have further contact with a particular vendor (*id.* ¶ 66); and might have told a customer that Plaintiff's work was "too complex" (*id.* ¶ 88).   None of these statements come close to rising to the level of implying that Plaintiff is unfit or lacks integrity in performing his job.   As noted above, the first two alleged statements merely reflect management directives, not comments about Plaintiff or his skills or character.   *See id.* ¶¶ 53, 66.   The final alleged statement, that Plaintiff's work was "too complex," is far from the type of negative statement regarding skills or character sufficient to constitute defamation *per se*.   *Compare Echtenkamp v. Loudon County Public Schools*, 263 F. Supp. 2d 1043, 1064 (E.D. Va. 2003) (holding the following statements about plaintiff, school psychologist, defamatory *per se*:   "plaintiff was abrasive, unprofessional, and rude"; "plaintiff altered a permission form after being told not to"; "plaintiff misrepresents and lies a lot"; "plaintiff's behavior is unprofessional and in need of corrective action") *with id.* at 1063-64 (holding the following statements about plaintiff did *not* qualify as defamatory *per se*:   "plaintiff needs to develop greater sensitivity to the reactions of others"; and "plaintiff has difficulty in her relationship with her colleagues").

Accordingly, Plaintiff's allegations do not raise his defamation *per se* claim to the level of plausibility. This claim should therefore be dismissed.

## CONCLUSION

Plaintiff's Complaint fails to allege facts that "nudge[] [his] claims" for retaliation under the FCA, defamation and defamation *per se* "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).   The Court should therefore dismiss the Complaint in its entirety.

Respectfully submitted,

Dated: May 7, 2012

/s/ Jason C. Schwartz
Jason C. Schwartz, Va. Bar No. 43635
Greta B. Williams
   (pro hac vice application forthcoming)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
jschwartz@gibsondunn.com
gbwilliams@gibsondunn.com
Telephone:        202.955.8500
Facsimile:        202.467.0539

*Attorneys for Defendant SAIC, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of May, 2012, I will electronically file the foregoing

with the Clerk of the Court for the Eastern District of Virginia using the CM/ECF system, which

will then send a notification of such filing (NEF) to the following:

Carla D. Brown
CHARLSON BREDEHOFT COHEN
BROWN & SAKATA, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
cbrown@charlsonbredehoft.com

/s/ Jason C. Schwartz
Jason C. Schwartz, Va. Bar No. 43635
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
jschwartz@gibsondunn.com
Telephone:      202.955.8500
Facsimile:      202.467.0539