**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| MARK DILLON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CA No. 1:12CV390 |
| | ) | (LO/TRJ) |
| SAIC, INC. | ) | |
| | ) | |
| Defendant. | ) | |

# OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Carla D. Brown
Virginia Bar No. 44803
cbrown@cbcblaw.com
CHARLSON BREDEHOFT COHEN
 BROWN & SAKATA, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile

*Counsel for Plaintiff, Mark Dillon*

## TABLE OF CONTENTS

SUMMARY ARGUMENT.................................................................................1

RELEVANT FACTUAL
ALLEGATIONS...............................................................................................1

ARGUMENT.....................................................................................................4

1. The Complaint Satisfies the Pleading Standards of FRCP 8.........................4

2. Mr. Dillon Has Stated a Claim for Retaliation in Violation of the False Claims Act.........5

   a. The Complaint Alleges that Mr. Dillon Conducted an Independent
      Investigation of Fraudulent Billing Practices, and Repeatedly Reported
      His Concerns to Defendant SAIC.................................................................6

3. Mr. Dillon Has Stated a Common Law Claim for Defamation and
   Defamation Per Se.......................................................................................10

   a. Plaintiff Has Stated a Claim That Mr. Dobbs' Statements Regarding
      Mr. Dillon's Demotion and Work are Defamatory.........................................11

      i. Mr. Dobbs' Statement Regarding Mr. Dillon's "Demotion"
         Was Defamatory.......................................................................................12

      ii. Mr. Dobbs' Statement Regarding Mr. Dillon's Work
          Being "Too Complex" Was Defamatory.....................................................13

   b. The Complaint Sufficiently Alleges Publication of the Defamatory
      Statements Under Virginia Law....................................................................14

      i. Exact Words Are Not Required To Plead
         a Defamation Claim Under Virginia Law....................................................15

      ii. The Complaint Pleads Malice Sufficient to Overcome the Qualified Privilege.....16

CONCLUSION.................................................................................................18

# TABLE OF AUTHORITIES

Ashcroft, et al. v. Iqbal, et al., 556 U.S. 662 (2009)....................................................4, 5

Bell Atl. Corp. v. Twombly, 550 U.S. 544 .........................................................4

Carwile v. Richmond Newspapers, Inc., 196 Va. 1 (1954)......................................11

Catercorp, Inc. v. Catering Concepts, Inc., et al., 246 Va. 22 (1993)...................15

Chadbourne v. Diggs, et al., 2002 U.S. Dist. LEXIS 28157 (E.D. Va. Nov. 21, 2002).......5

Chaves v. Johnson, 230 Va. 112, (1985)...........................................................13

Chapin v. Knight Ridder, Inc., 993 F.2d 1087 (4th Cir. 1993).......................10

Eberhardt v. Integrated Design & Constr., 167 F.3d 861 (4th Cir. 1999).................6, 7, 10

Fayetteville Investors v. Commercial Builders, Inc., et al., 936 F.2d 1462 (1991)............5

Fed. Land Bank v. Birchfield, 173 Va. 200 (1939)...............................................15

Fleming v. Moore, 221 Va. 884 (1981)...............................................................11

Fuste, et al. v. Riverside Healthcare Association, Inc., et al., 265 Va. 127 (2003)............14, 15

Government Micro Resources, Inc. v. Jackson, 271 Va. 29 (2006)............................15

Hargrave v. Tignor, 24 Va. Cir. 353 (1991)........................................................16, 17

Hatfill v. The N.Y. Times Co., 416 F.3d 320 (4th Cir. 2005)....................................11

Hyland v. Raytheon Technical Services Co., et al., 277 Va. 40 (2009).........................12

Larimore v. Blaylock, et al., 259 Va. 568 (2000)..................................................16

Ortiz v. Panera Bread Co., 2011 U.S. Dist. LEXIS 85463 (E.D. Va. Aug. 2, 2011).........16

Raytheon Tech. Servs. Co. v. Hyland, 273 Va. 292 (2007).......................................13

Republican Party of North Carolina v. Martin, 980 F.2d 943 (4th Cir. 1992)..................5

Southeastern Tidewater Opportunity Project, Inc., et al. v. Bade, 246 Va. 273 (1993).......18

Tronfield v. Nationwide Mutual Ins. Co., et al., 272 Va. 709 (2006)............................13

Union of Needletrades, Indus. & Textile Emp. V. Jones, 268 Va. 512 (2004)................16

United States ex rel Elms v. Accecture, LLP, 341 Fed. Appx. 869 (2009).....................6, 9, 10

United States ex rel Owens v. First Kuwaiti Gen. Trading & Contr. Co.,
    612 F.3d 724 (4th Cir. Va. 2010)...........................................................................7

US ex rel. Yesudian v. Howard University, 332 U.S. App. D.C. 56 (D.C. Cir. 1998).........7

Venkatraman v. REI Systems, Inc., 417 F.3d 418 (4th Cir. 2005)...............................4

Wells v. Liddy, 186 F.3d 505 (4th Cir. 1999)......................................................11

Wynn v. Wachovia Bank, N.A., et al. 2009 U.S. Dist. LEXIS 38250 (E.D. Va. 2009)......16

Yeagle v. Collegiate Times, 255 Va. 293 (1998)....................................................11

Zahodnick v. IBM, 135 F.3d 911 (4th Cir. 1997)................................................5, 6

## SUMMARY OF ARGUMENT

Mr. Dillon has fully and sufficiently alleged his claims for Retaliation under the False Claims Act and Defamation arising from his questioning, resisting, and reporting his supervisor, Harold Dobbs's instructions to him and other employees of SAIC to falsely bill their time to a Government Contract.

Ignoring the details and specifics set forth in the Complaint and Mr. Dillon's multiple complaint, SAIC contends that Mr. Dillon did not meet the "protected activity" and "notice" elements because Mr. Dillon did not allege that he used the words "fraudulent" or "illegal" when bringing his concerns about SAIC timekeeping practices to his supervisors, human resources, and the company Ethics Committee. No formulaic recitation of the language of a statute or federal regulations is required to report fraud on the Government. However, it is unequivocal that Mr. Dillon raised and reported his concerns regarding what he objectively and subjectively believed was false billing to the Government. As such, Defendant's motion to dismiss impermissibly seeks to apply a higher standard of conduct to Mr. Dillon than what is required by the False Claims Act or Fed. Civ. Proc. R. 8.

Furthermore, Mr. Dillon has adequately pleaded that he was defamed in retaliation for reporting false billing on a Government contract, and out of ill-will and spite directed to him by the person whose illegal instructed Mr. Dillon resisted, opposed, and, reported to SAIC on multiple occasions. Accordingly, SAIC's Motion to Dismiss is without merit and warrants denial.

## FACTS

Mr. Dillon began his employment with SAIC on January 29, 1996. *Compl.* ¶ 25. Over the course of his 16-year career with SAIC, Mr. Dillon received excellent annual performance

reviews, promotions, raises, equity awards, and bonuses, and held significant responsibility as a designated "key" employee, Vice President, and Director. *Compl.* ¶¶ 25, 27, 29-30, 32. In 2010, Mr. Dillon received glowing evaluations from his direct supervisor, Mr. Harold Dobbs, and was granted a cash bonus, vesting stock bonuses, and additional responsibility in recognition of his accomplishments. *Compl.* ¶¶ 33-39.

Mr. Dobbs' opinion of Mr. Dillon quickly soured, however, once Mr. Dillon discovered, researched, and began reporting serious timekeeping issues within SAIC. *Comp.* ¶ 40. In particular, Mr. Dobbs ordered SAIC employees – on numerous occasions – to bill administrative tasks to the government customer as billable charges, rather than to non-billable overhead. *Compl.* ¶¶ 42, 51. In other words, Mr. Dobbs had ordered SAIC employees to bill and obtain federal funds for tasks that should not have been billed under the terms of SAIC's contract and otherwise falsely skew time recording ultimately submitted to the Federal Government. Mr. Dillon confirmed his suspicions that these billing practices were fraudulent through Scott Sorensen, SAIC's Vice President for Finance and corporate executive in charge of timekeeping, who assured Mr. Dillon that it was proper to bill administrative tasks to overhead rather than as charges to the customer. *Compl.* ¶¶ 47-48. Mr. Dobbs continued to disregard Mr. Dillon's complaints about SAIC billing practices, however, insisting that he did not wish to see an email from Mr. Sorensen clarifying the proper billing practices. *Compl.* ¶ 52. Despite this, Mr. Dillon indicated to Mr. Dobbs that he considered Mr. Dobbs' instructions to be improper, Mr. Dillon resisted and opposed the instruction, and told Mr. Dobbs that he would continue to follow correct timekeeping policy. *Compl.* ¶ 52.

As a result of Mr. Dillon's investigation, refusal to inappropriately bill his time, and reporting of these false timekeeping practices, Mr. Dobbs began criticizing Mr. Dillon's

performance for perceived deficiencies that had no basis in fact – and were not mentioned in Mr. Dillon's performance review just a few months prior. For example, in response to Mr. Dillon's objections to Mr. Dobb's directive to charge non-billable overhead charges to billable charges to the customer, Mr. Dobb raised for the first time – despite a recent glowing performance review – alleged concerns with Mr. Dillon's charging of time to overhead and alleged floor check "failures." *Compl.* ¶¶ 43-45. When Mr. Dillon continued to resist Mr. Dobbs' fraudulent billing scheme, Mr. Dobbs demoted Mr. Dillon from his managerial position and reassigned Mr. Dillon a non-essential position drafting a single document, (the Concept of Operations or "CONOPS" document) without internal or external announcement (as was customary), even though Mr. Dillon continued to provide technical and financial input into the projects he had been formally reassigned from. *Compl.* ¶¶ 53-56, 58, 62. Mr. Dillon raised the issue of retaliation with Donald Dixon, Deputy Human Resources Director of the Business Unit. *Compl.* ¶ 57.

SAIC took no action. *Id.* Instead, Mr. Dobbs was permitted to continue his retaliatory behavior against Mr. Dillon, ultimately leading to Mr. Dillon's termination. In August 2011, Mr. Dobbs ordered Mr. Dillon to cease communicating with vendors and relieved Mr. Dillon from his system review exercise responsibilities. *Compl.* ¶ 66. Mr. Dillon again reported this retaliatory treatment to Mr. Dixon on two separate occasions in the latter part of 2011, but no action was taken. *Compl.* ¶ 67, 73. Instead, Mr. Dobbs removed Mr. Dillon from a capacity and performance management project despite having received excellent external reviews. *Compl.* ¶ 74.

In late November 2011, Mr. Dillon discovered additional false timekeeping practices at SAIC, which he investigated through requests made to Carsten Schmid, Lisa Daniels, Jonathan Dart, and Donald Dixon. *Compl.* ¶ 77-84. Mr. Dillon raised his concerns with SAIC about these

time charging practices throughout January 2012, stating to Mr. Dixon that he felt it would be necessary to initiate an SAIC Ethics Committee inquiry regarding these practices. *Compl.* ¶ 85. Mr. Dixon again took no action, but Mr. Dillon did initiate an inquiry. *Id.*

Mr. Dillon was removed from his program by Mr. Dobbs in late January 2012, allegedly due to the government customer's perception that Mr. Dillon's work had "no value" and was overly "complex." *Compl.* ¶¶ 86-87. These statements, which were reported to Mr. Dillon by Mr. Dobbs, mirrored the words Mr. Dobbs had previously used to describe Mr. Dillon's work. *Id.*

Mr. Dillon was terminated the day after his meeting with Mr. Dobbs. *Compl.* ¶ 92. Mr. Dillon immediately requested whistleblower protection from the SAIC Ethics Committee, but received no response. *Compl.* ¶ 93.

## ARGUMENT

### 1. The Complaint Satisfies the Pleading Standards of FRCP 8

Defendants make much of the *Iqbal* and *Twombly* line of cases interpreting the pleading standards of Federal Rule of Civil Procedure 8. While *Iqbal* and *Twombly* add clarity to the standards governing notice pleading under federal rules, *Iqbal* and *Twombly* did not change the presumptions which govern a motion to dismiss.

When considering a motion to dismiss, the court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. Rei Systems, Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). Federal Rule of Civil Procedure 8(a) requires the plaintiff to plead only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007). To

4

withstand a motion to dismiss, a complaint merely needs to contain "sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (*citing Twombly*, 550 U.S. at 557.) The Court should conclude that a plaintiff's claim is facially plausible if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The function of a motion to dismiss is to "test the sufficiency of a Complaint" not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Chadbourne v. Diggs,* 2002 U.S. Dist. LEXIS 28157 (E.D. Va. Nov. 21, 2002)(*citing Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). As a matter of general course, a motion to dismiss is a "disfavored motion." *Id.* (*citing Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462 (4th Cir. 1991)).

Under these standards, Mr. Dillon has properly pleaded claims of False Claims Act retaliation, defamation, and defamation *per se* against Defendant SAIC. The Complaint sets forth numerous factual – not conclusory – allegations, grounded in Mr. Dillon's own observations, which support or provide inferences in support of Mr. Dillon's claims.

## 2. Mr. Dillon Has Stated a Claim for Retaliation in Violation of the False Claims Act

To state a *prima facie* case for retaliation, the plaintiff must prove that (1) he took acts in furtherance of a qui tam suit [i.e. engaged in "protective activity"]; (2) his employer knew of these acts; and (3) his employer discharged him as a result of these acts. *Zahodnick v. IBM*, 135 F.3d 911, 914 (4th Cir. 1997). Unlike a False Claims Act suit, a retaliation claim is not subject to the heightened pleading requirements for fraud under Fed. Civ. P. Rule 9(b), and a "plaintiff

need only satisfy Rule 8's notice pleading requirements to survive a motion to dismiss." *United States ex rel. Elms v. Accenture LLP*, 341 Fed. Appx. 869, 873-874 (4th Cir. 2009).[1]

Defendant SAIC does not dispute that Mr. Dillon was terminated as a result of his objections to SAIC's timekeeping practices, but has moved to dismiss on the first two elements. Defendant's argument is, in sum, that Mr. Dillon did not meet the "protected activity" and "notice" elements because Mr. Dillon did not allege that he used the words "fraudulent" or "illegal" when bringing his concerns about SAIC timekeeping practices to his supervisors, human resources, and the company Ethics Committee. Defendant's motion to dismiss should be denied, because it seeks to apply a higher standard of conduct to Mr. Dillon than what is required by the False Claims Act or on a motion to dismiss.

> **a. The Complaint Alleges that Mr. Dillon Conducted an Independent Investigation of Fraudulent Billing Practices, and Repeatedly Reported His Concerns to Defendant SAIC**

The False Claims Act's whistleblower provision provides a cause of action to any employee who is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against" by his employer "because of lawful acts...in furtherance of" a False Claims Act suit. 31 U.S.C. § 3730(h). Qualifying lawful acts include investigation of, initiation of, testimony for, or assistance in an action filed or to be filed under the FCA. *Id.* The FCA does not, as Defendant suggests, require a plaintiff use magic words (such as "fraud"), mention

---

[1]   Moreover, many of the cases relied upon by SAIC in its brief did not depose of the matter as a motion to dismiss and evaluated the claims after relevant evidence had been collected. *See e.g. Eberhardt v. Integrated Design & Constr.*, 167 F. 3d 861, 864 (4th Cir.1999) (plaintiff's False Claims Act retaliation case was tried to jury and verdict was upheld by the Fourth Circuit); *see also Zahodnick v. IBM Corp.*, 135 F.3d 911 (4th Cir. 1997) (plaintiff False Claims Act retaliation case decided on summary judgment).

the possibility of a lawsuit, or be aware of the False Claims Act or its requirements. Rather, protected activity:

> [N]eed not indicate that an actual FCA suit was being contemplated, but it must evince some attempt to expose possible fraud...For activity to rise above the level of ordinary critique and constitute a step in preparation for an FCA claim, there must be some suggestion of impropriety or illegality by the employer that the employee is attempting to uncover.

*United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contr. Co.*, 612 F.3d 724, 735 (4th Cir. Va. 2010). "An employee need not have actually filed a qui tam suit or even known about the protections of section 3730(h) in order to engage in protected activity." *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 867 (4th Cir. 1999). *See also United States ex rel. Yesudian v. Howard University*, 332 U.S. App. D.C. 56, 153 F.3d 731, 740 (D.C. Cir. 1998) (stating that section 3730(h)'s inclusion of an "'investigation for . . . an action filed or to be filed' within its protective cover . . . manifests Congress' intent to protect employees while they are collecting information about a possible fraud, before they have put all the pieces of the puzzle together").

Mr. Dillon went above and beyond merely "reporting" his concerns with Mr. Dobbs' suggested billing practices, but undertook an investigation of SAIC's billing practices and ultimately put Defendant on notice that there was a scheme defrauding the government occurring within SAIC.

First, Mr. Dillon sought confirmation from Scott Sorensen, SAIC's Vice President for Finance and corporate executive in charge of timekeeping, that Mr. Dobbs' timekeeping practices were inappropriate. *Compl.* ¶ 47-48. This constituted an investigation of SAIC's billing practices, and in particular Mr. Dobbs' orders to bill time "for which there is no direct product" for the government customer. *See* Memo. Ex. 1. When Mr. Dillon informed Mr.

Dobbs that his practice of billing administrative time to the government customer was improper, and therefore resulting in an overcharge to the government customer, Mr. Dobbs was "visibly displeased" and refused to review Mr. Sorenson's directions. *Compl.* ¶¶ 51-52. Mr. Dillon was removed from his managerial position the following day. *Compl.* ¶ 53.

Second, Mr. Dillon investigated Mr. Dobbs' order that the Ashburn Remediation team bill DCISS project time as chargeable time, rather than as unbillable time (as directed by the government representative, Ms. Daniels). *Compl.* ¶¶ 75-78. Mr. Dillon first sought to remediate this situation by requesting a remediation charge number from Mr. Dobbs and thereby alerting Mr. Dobbs that the government was being improperly billed for unbillable work. *Compl.* ¶ 79. Mr. Dillon reiterated this request to Ms. Daniels, who reaffirmed that time done for the Ashburn Remediation project should have been charged as unbillable. *Compl.* ¶¶ 80-81. Mr. Dillon further investigated his understanding of the time billing practices by completing SAIC's Ethics and Time charging training, and by questioning Mr. Dart about billing practices. *Compl.* ¶¶ 82-84. Mr. Dillon then brought his concerns regarding the time charging again to Mr. Dixon, told Mr. Dixon that he "may be compelled to initiate an SAIC Ethics Committee inquiry," and did in fact initiate an ethics inquiry regarding the time charging issues. *Compl.* ¶ 85. Mr. Dillon's statement to Mr. Dixon that he believed Mr. Dobbs' timekeeping directions warranted an ethics committee inquiry, and his subsequent filing of the same, was sufficient to put SAIC on notice of potential fraud occurring within the company and raised a distinct possibility of litigation under the FCA. SAIC's attempts to characterize Mr. Dillon's concerns, repeated reports, and filing of an ethics inquiry as "routine questions about SAIC's time charging practices" and "problems he

was having with his supervisor" is refuted by the plain language of the Complaint and common sense.[2]

Mr. Dillon's actions, and particularly his repeated communications with Mr. Dobbs about the appropriateness of charging administrative tasks to the government customer, more than satisfies the "in furtherance of" prong of an FCA retaliation claim. Defendant's statement that "Plaintiff fails to allege that he complained to Dobbs that charging timecard administration to the customer was fraudulent or illegal" requires the willful suspension of common sense; if nonbillable time was charged as billable time to the government in contravention of proper billing policy, SAIC sought payment that it was not entitled to – or, in other words, made a false claim upon the federal government in direct contravention of the False Claims Act.

Actions similar to these taken by Mr. Dillon have, in other cases, been considered sufficient to form the basis of an FCA retaliation claim. For example, the Fourth Circuit has recognized a claim for FCA retaliation where the plaintiff became concerned about the legality of a rebate scheme which "short-changed the government" and was removed from his position after he "expressed his misgivings" to his supervisor. *United States ex rel. Elms v. Accenture LLP*, 341 Fed. Appx. 869, 873-874 (4th Cir. 2009) (recognizing that plaintiff's complaint did not need to meet the heightened pleading requirements of Rule 9 to state a claim for FCA retaliation.) And in *Eberhardt*, the Fourth Circuit reasoned,

---

[2] In particular, Defendant's statement that "Plaintiff does not even allege that he even suggested to Dixon that he told Dixon that SAIC's time charging practices were fraudulent or otherwise illegal" ignores the standards governing review of a motion to dismiss, which require the admission of all reasonable inferences stemming from the plaintiff's factual allegations. The Complaint alleges that "Mr. Dillon advised Mr. Dixon that he was demoted shortly after raising a concern regarding billing and time charges on a project"; that "he was concerned about the retaliation and hostility he was experiencing after his complaints regarding the time charging on the projects"; that "Mr. Dillon may be compelled to initiate an SAIC Ethics Committee inquiry regarding the time charging issues"; and that Mr. Dillon had, in fact, initiated an ethics inquiry anonymously. *Compl.* ¶¶ 57, 73, 85. The clear inference to be derived from these allegations is that Mr. Dillon discussed the basis of his timekeeping complaints with Mr. Dixon, namely that Mr. Dobbs was instructing SAIC employees to improperly seek payment from the government customer for work that SAIC should not be paid for.

"[An] employee [may] put[] the employer on notice that a qui tam suit under section 3730 is a reasonable possibility... by expressly stating an intention to bring a qui tam suit, **but it may also be accomplished by any action which a factfinder reasonably could conclude would put the employer on notice that litigation is a reasonable possibility**. Such actions would include, but are not limited to, characterizing the employer's conduct as illegal or fraudulent **or recommending that legal counsel become involved.**

*Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 867-869 (4th Cir. 1999) (emphasis added). *See also United States ex rel. Elms v. Accenture LLP*, 341 Fed. Appx. 869, 873-874 (4th Cir. 2009) ("[c]ourts have interpreted FCA-protected activity broadly to cover not only the filing of a qui tam suit but also a variety of actions aimed at ascertaining whether or not a fraud has been committed that would give rise to a possible FCA suit.")

Here, Mr. Dillon raised numerous concerns with his supervisor, human resources, and the SAIC Ethics Committee regarding timekeeping practices that he believed were improper and possibly fraudulent or illegal, and went as far as to initiate an Ethics Committee inquiry into these billing practices. Mr. Dillon's efforts were persistent, and put SAIC on notice that a *qui tam* suit was a reasonable possibility. Defendant's attempt to hold Mr. Dillon's actions to a higher standard of conduct both misapprehends the law of FCA retaliation and disregards the standards governing a motion to dismiss. As such, Mr. Dillon respectfully request this Court deny Defendant's motion to dismiss his FCA retaliation claim.

### 3. Mr. Dillon Has Stated a Common Law Claim for Defamation and Defamation Per Se

In Virginia, common law defamation requires proof of (1) the publication of (2) a false and defamatory statement (3) made with the requisite intent. *Chapin v. Knight Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). "[D]efamatory words that are actionable *per se* include "(3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment...[or]

10

(4) Those which prejudice such person in his or her profession or trade." *Fleming v. Moore*, 221 Va. 884, 889 (1981). Mr. Dillon has alleged that the Defendant, through Mr. Dobbs, defamed Mr. Dillon by making false statements about his work and standing within the company.

Defendants have focused their motion to dismiss on Mr. Dobbs' statement – both within SAIC and to the government customer – that Mr. Dillon's work was "too complex," claiming that the Complaint does not sufficiently allege publication, that the statement was opinion, or was privileged. Not only is this statement only one of two actionable defamatory statement alleged in the Complaint, Defendant's arguments are not sufficient to support of motion to dismiss under Virginia law.

### a. Plaintiff Has Stated a Claim That Mr. Dobbs' Statements Regarding Mr. Dillon's Demotion and Work Are Defamatory

A defamatory statement may be made expressly or by "inference, implication, or insinuation." *Hatfill v. N.Y. Times Co.*, 416 F.3d 320, 331 (4th Cir. 2005) (*quoting Carwile v. Richmond Newspapers Inc.*, 196 Va. 1, 82 S.E.2d 588, 592 (1954)). The meaning of a defamatory statement may therefore arise not only from the words actually used, but from any "inferences fairly attributed to them." *Wells v. Liddy*, 186 F.3d 505, 523 (4th Cir. 1999) (*quoting Yeagle v. Collegiate Times*, 255 Va. 293, 497 S.E.2d 136, 138 (1998)).

Mr. Dillon has alleged two instances in which Mr. Dobbs made defamatory statements about Mr. Dillon while at he was employed at SAIC:

1. Mr. Dobbs told Carsten Schmid, Deputy Program Manager, that Mr. Dillon had been demoted, when in fact Mr. Dobbs had reassigned Mr. Dillon in retaliation for raising timekeeping concerns (*Compl.* ¶ 55), and later drafted organizational charts that showed Mr. Dillon had been demoted (*Compl.* ¶ 60);

2. Mr. Dobbs told the government customer that Mr. Dillon's work was "too complex," which was later cited as a reason for Mr. Dillon's termination (*Compl.* ¶ 88).

These statements were false and actionable defamation, as they were demonstrably false at the time they were uttered and are not opinion.

> i. Mr. Dobbs' Statement Regarding
> Mr. Dillon's "Demotion" Was Defamatory

Mr. Dobbs' statement that Mr. Dillon had been demoted was false, as evidenced by Mr. Dobbs' later statement that Mr. Dillon had not been demoted. *Compl.* ¶ 60. Mr. Dobbs made this admission after having told and prepared organizational charts for Mr. Schmid that Mr. Dillon had been demoted, and immediately after Mr. Dillon had raised concerns about Mr. Dobbs' timekeeping directions. *Compl.* ¶¶ 52-55, 60.

The defamatory nature of this false statement becomes apparent when the context of these statements is taken into consideration. In evaluating the falsity of the statements, plaintiffs are entitled to demonstrate to the jury the statements as a whole are defamatory. *See Hyland v. Raytheon Tech. Servs. Co.,* 277 Va. 40, 48 (2009) (hereinafter "*Hyland II*") (evaluating the truth or falsity of an alleged defamatory statement is ordinarily a question for the jury...When evaluating falsity, the alleged defamatory statement must again be considered as a whole -- "the factual portions of an allegedly defamatory statement may not be evaluated for truth or falsity in isolation, but must be considered in view of any accompanying opinion and other stated facts."). Applying this standard, the Court in *Hyland II* held that:

> The requirement that an allegedly defamatory statement be considered **as a whole** also is **vital** to a determination of the truth or falsity of a defamation claim, because defamatory statements may be made by **implication, inference, or insinuation**.

*Id.* at 47-48 (emphasis added) (internal citations omitted).

In this case, Mr. Dobbs' statement that Mr. Dillon had been demoted was made in an effort to discourage Mr. Dillon from raising concerns about fraudulent billing practices, and despite Mr. Dobbs' knowledge that Mr. Dillon had done nothing to warrant the removal of his

supervisory responsibilities. Mr. Dillon was also removed from his position "without any announcement to his staff, SAIC's business partners on the project, or the customer," and without a customary internal SAIC announcement. *Compl.* ¶¶ 55-56. In this context, Mr. Dillon's "demotion" was treated differently than other reassignments at SAIC, and gave the impression that Mr. Dillon had done something inappropriate warranting his reassignment. *Id.* Although Defendant attempts to argue that such a statement cannot be considered defamatory, Defendant cites to no Virginia of Fourth Circuit cases which support this claim.

The false statement that Mr. Dillon had been demoted therefore prejudiced Mr. Dillon in his profession and suggested that he was unfit to perform the duties of his position, establishing the elements of a claim of common law defamation and defamation *per se*.

    ii.  Mr. Dobbs' Statement Regarding Mr. Dillon's
              Work Being "Too Complex" Was Defamatory

The Complaint sufficiently alleges that Mr. Dobbs defamed Mr. Dillon when he told the government customer that Mr. Dillon's work was "too complex," as it is not opinion and is defamatory as matter of law. *Compl.* ¶ 88.

Under Virginia law, pure expressions of opinion are not actionable as defamation. *See Chaves v. Johnson*, 230 Va. 112, 119 (1985). However, "'expressions of 'opinion' may often imply an assertion of objective fact'" and "'[s]imply couching…statements in terms of opinion does not dispel these implications.'" *Raytheon Tech. Servs. Co. v Hyland,* 273 Va. 292, 303 (2007) (citation omitted). In this case, the statement that Mr. Dillon's work was "too complex" can be evaluated for truth or falsity through the discovery process, and cannot be summarily dismissed as opinion. *See Tronfeld v. Nationwide Mutual Ins. Company*, 272 Va. 709, 715-16, 636 S.E.2d 447, 451 (2007) (the Court found that a statement that plaintiff-lawyer "just takes people's money" and a statement that people would receive more money if they worked directly

with the insurance adjuster were statements of fact because the statements could be disproved by evidence that the lawyer's clients received monetary or other relief as a result of his legal services and/or that such relief exceeded offers made by insurance companies.) This is particularly true given that Mr. Dillon was allegedly terminated for producing work product that was "too complex," which can also be evaluated for truth or falsity. *Compl.* ¶ 88.

Furthermore, Mr. Dobbs' statement that Mr. Dillon's work was "too complex" is a textbook example of defamation *per se*, as it goes to Mr. Dillon's ability to perform his job duties and prejudices his reputation in business. *See Fuste v. Riverside Healthcare Association, Inc.,* 265 Va. 127, 132, 575 S.E.2d 858, 861 (2003). As is alleged in the Complaint, Mr. Dobbs' statement that Mr. Dillon's work was "too complex" was enough to convince the government customer to terminate Mr. Dillon's employment. *Compl.* ¶ 88. The Complaint also alleges that Mr. Dobbs knew this statement was false at the time he made it, as he acknowledged that "other customers within NSF did not feel that way, and that he felt Mr. Dillon had performed projects 'brilliantly.'" *Compl.* ¶ 89. The statement that Mr. Dillon's work was "too complex" is actionable under Virginia law, and is sufficiently supported by factual pleading in the Complaint.

### b. The Complaint Sufficiently Alleges Publication of the Defamatory Statements Under Virginia Law

On the element of publication, Defendant challenges only the statement that Mr. Dillon's work was "too complex," arguing that the Complaint does not allege the exact words of the defamatory statement and is subject to a qualified privilege. Defendant's motion to dismiss should be denied on the publication element because Virginia law does not recognize the former requirement, and no qualified privilege applies where malice has been sufficiently alleged.

i. Exact Words Are Not Required To Plead
a Defamation Claim Under Virginia Law

Virginia law does not require that a Complaint plead the exact words used by the defendant in a defamation case. To state a claim for defamation, a "sufficient number" of the defamatory words must be proven "to make out a good cause of action...They must be substantially proven as alleged." *Fed. Land Bank v. Birchfield*, 173 Va. 200, 215, 3 S.E.2d 405, 410 (1939); *see also Gov't Micro Resources, Inc. v. Jackson*, 271 Va. 29, 624 S.E.2d 63 (2006). The Virginia Supreme Court has held that while it is better pleading practice to recite the exact words of the statements at issue in the complaint, a complaint that does not do so "may nevertheless state a substantial cause of action imperfectly." *Government Micro Resources, Inc. v. Jackson*, 271 Va. 29, 38 (2006) ("A motion for judgment asserting a claim for defamation that does not recite all the specifics of the alleged defamatory statement, although not good pleading, may nevertheless state a substantial cause of action imperfectly"), *quoting Federal Land Bank v. Birchfield*, 173 Va. 200, 217 (1939) (although the complaint asserting a claim of defamation "was defective in that it did not purport to give the exact words claimed to have been used by defendant, [ ] it did state a substantial cause of action imperfectly" and was permitted to proceed)). *See also, CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993) ("Even though a motion for judgment or a bill of complaint may be imperfect, when it is drafted so that defendant cannot mistake the true nature of the claim, the trial court should overrule the demurrer"); *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 134 (2003) (overruling demurrer by the defendants who argued that *Birchfield* required all the particular allegations be in the motion for judgment).[3]

---

[3] It bears emphasis that even in *Birchfield* the complaint did not state the exact words used by the defendant and the Virginia Supreme Court permitted the defamation claim to proceed.

15

Here, Mr. Dillon has alleged that Mr. Dobbs told SAIC's government customer that Mr. Dillon's work was "too complex," and this statement ultimately led to his termination from SAIC. *Compl.* ¶ 88. Defendant's reliance on *Ortiz v. Panera Bread Co.*, No. 1:10cv1424, 2011 U.S. Dist. LEXIS 85463 (E.D. Va. Aug. 2, 2011) is misguided, as the court there did not state that exact pleading of a defamatory statement was necessary; rather, the court concluded that the allegedly defamatory statement was made under a qualified privilege, and therefore could not satisfy the publication element of defamation. *Id.* at *10. The Complaint alleges that Mr. Dobbs made a false, prejudicial statement about Mr. Dillon to a government customer, and this is sufficient to satisfy the publication requirement in the absence of privilege.

ii. The Complaint Pleads Malice Sufficient
to Overcome the Qualified Privilege

"[I]n the context of an employment relationship, an allegedly defamatory statement is afforded a qualified privilege when the statement is made between persons on a subject in which they have an interest or duty." *Union of Needletrades, Indus. & Textile Emp. v. Jones*, 268 Va. 512, 603 S.E.2d 920, 924 (Va. 2004). The Virginia courts have applied this privilege to communications by employers to employees regarding employee terminations. *See Wynn v. Wachovia Bank*, No. 3:09CV136, 2009 U.S. Dist. LEXIS 38250, at *9-10 (E.D. Va. 2009); *Hargrave v. Tignor*, 24 Va. Cir. 353, 358 (Stafford 1991) ("It is an established general rule that a communication respecting the character of an employee or former employee is qualifiedly privileged if made in good faith by a person having a duty in the premises to one who has a definite interest therein ... So long as good faith is present, the person making the statement is not limited to facts that are within his personal knowledge but may, and should, pass on to his inquirer all relevant information that has come to him, regardless of whether he believes it to be true or not.") The privilege may be overcome by a showing of malice. *Larimore v. Blaylock*, 259

16

Va. 568, 528 S.E.2d 119, 121 (Va. 2000). "Common law malice exists where: (1) the defendant knew the statement was false or made it with reckless disregard of whether it was false or not; or (2) the statement was deliberately made in such a way that it was heard by persons having no interest or duty in the subject of the statement; or (3) the statement was unnecessarily insulting; or (4) the language used was stronger or more violent than was necessary under the circumstances; or (5) the statement was made because of hatred, ill will or a desire to hurt the plaintiff rather than as a fair comment on the subject." *Hargrave*, 24 Va. Cir. at 359. A plaintiff is not required to prove malice on a motion to dismiss, as is suggested by Defendant.

In this case, Mr. Dobbs made a statement which he later indicated was not true, and, out of pure ill-will, made the statement to a subordinate of Mr. Dillon's who had no interest in the matter. The Complaint alleges that Mr. Dobbs engaged in a pattern of retaliation against Mr. Dillon after Mr. Dillon raised concerns about Mr. Dobbs' fraudulent timekeeping practices. *See, e.g., Compl.* ¶ 44 ("Mr. Dobbs immediately responded to Mr. Dillon by questioning Mr. Dillon's own timekeeping..."); ¶ 52-53 ("...Mr. Dillon approached Mr. Dobbs to discuss timekeeping and allocating time to overhead...Mr. Dobbs was visibly displeased...The following day...without warning and despite Mr. Dillon's outstanding review in the previous month...Mr. Dobbs demoted Mr. Dillon from his managerial position on the project"); ¶ 66 ("Mr. Dobbs directed Mr. Dillon to have no further contact with the vendor at issue, RPS. Mr. Dobbs then removed Mr. Dillon from responsibility for SR exercises, where he had been the lead since September 2010"); ¶ 74 ("Mr. Dobbs removed the capacity and performance management project from Mr. Dillon...despite acclaim from other NSF Subject Matter Experts ("SME") within and outside of DCISS for Mr. Dillon's plan"); ¶¶ 153-155. These actions constitute "behavior actuated by motives of personal spite, or ill-will, independent of the occasion on which

the communication was made," and are sufficient to overcome the qualified privilege at the motion to dismiss stage. *Southeastern Tidewater Opportunity Project, Inc. v. Bade*, 246 Va. 273, 276, 435 S.E.2d 131, 10 Va. Law Rep. 279 (1993).

Mr. Dillon endured a pattern of increasing retaliation by Mr. Dobbs, and the defamatory statements about Mr. Dobbs' demotion and work were made with malice. Defendant's motion to dismiss should be denied as to Plaintiff's claims of defamation and defamation *per se*.

### CONCLUSION

For all of the reasons stated above, Defendant's Motion to Dismiss should be denied in its entirety.

May 21, 2012                              Respectfully submitted,

*/S/ Carla D. Brown*

Carla D. Brown, VSB No. 44803
cbrown@cbcblaw.com
CHARLSON BREDEHOFT COHEN
    BROWN & SAKATA, P.C.
11260 Roger Bacon Drive, Ste. 201
Reston, Virginia 20190
(703) 318-6800  Telephone
(703) 318-6808  Facsimile

*Counsel for Plaintiff, Mark Dillon*

## CERTIFICATE OF SERVICE

I hereby certify on the 21st day of May 2012, I electronically filed the foregoing Opposition to Defendant's Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send a notification of such filing to the following:

Jason Schwartz, Esq.
jschwartz@gibsondunn.com
Greta B. Williams, Esq.
gwilliams@gibsondunn.com
GIBSON DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500   Telephone
(202) 467-0539   Facsimile

*Counsel for Defendant SAIC, Inc.*


*/S/ Carla D. Brown*


Carla D. Brown, Virginia Bar No. 44803
cbrown@cbcblaw.com
CHARLSON BREDEHOFT COHEN
    BROWN & SAKATA, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800   Telephone
(703) 318-6808   Facsimile

*Counsel for Plaintiff, Mark Dillon*